UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOHN S. PINTAR, | ) | 1:09-CV-00880-GSA |
| | ) | |
| Plaintiff, | ) ) | ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | ) ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) ) | |

**BACKGROUND**

Plaintiff John S. Pintar ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

//

//

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 8 & 9.

1

# FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed his application on or about March 21, 2006, alleging disability beginning May 8, 2005. AR 74-76. His application was denied initially (AR 47-51) and on reconsideration (AR 55-59); thereafter Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 46. ALJ Sally C. Reason held a hearing on March 3, 2008 (AR 25-43), and issued an order denying benefits on July 22, 2008. AR 5-18. Plaintiff requested a review of the decision (AR 19-22) and on February 26, 2009, the Appeals Council denied review. AR 1-4.

**Hearing Testimony**

ALJ Reason held a hearing on March 3, 2008 in Los Angeles, California. Plaintiff appeared and testified. He was represented by attorney Alex Boudov. Vocational Expert ("VE") Ron Hatakyamo also testified. AR 25-43.

Plaintiff worked as a golf caddy for over 20 years.[3] AR 28. He last caddied on May 5, 2005 and has not worked in the past 15 years. AR 28-29. He has a history of drug and alcohol abuse, but he has not taken drugs since April 2005. AR 38-39.

Plaintiff stopped working because he had a "grand mal" seizure. AR 29. He subsequently saw a neurologist who prescribed some trial medications, but he hasn't "found one that works." AR 30. He has no side effects from the seizure medications. AR 31. He had additional seizures on November 8, 2007 and February 1, 2008. AR 30. The 2007 seizure occurred when he tried to return to work. *Id*. The 2008 seizure, which required him to go to the hospital, occurred because he ran out of medication. *Id*.

Plaintiff had a physical examination as a result of the 2005 seizure. AR 31. The blood tests from the physical examination resulted in a diagnosis of Hepatitis C in approximately June 2005. *Id*. He underwent a treatment program at the University of Southern California (USC) one year later. AR 32. The treatment consisted of Pegasys (Interferon and Ribavirin) and lasted only

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] Although not discussed at the hearing, Plaintiff held other jobs including golf range attendant in 1990, warehouse worker from 1994 to 1995, and construction laborer from 1995 to 1996. AR 123. The ALJ addresses these prior positions in the opinion denying benefits.

16 weeks because he was not responding to the treatment. *Id*. Currently, he is seeing a counselor at the Hollywood Free Clinic twice per month, but he is not being treated for hepatitis. AR 37-38.

Plaintiff's side effects of Pegasys include lack of energy, inability to go outside, vomiting, and weight loss. AR 32. His hepatitis also causes him to have anxiety, depression, headaches, and insomnia. AR 33. Plaintiff has headaches every day, which he can "kind of get through" by taking ibuprofen. AR 33-34. However, one day per week the headache is "unbearable" and "extremely debilitating" for about eight hours. *Id*. He describes it as "a massive hangover . . . a vice on each side of each temple . . . a typical migraine." AR 34.

When asked about his anxiety, Plaintiff stated he feels like he is enclosed in a box and cannot go outside. AR 35. He cannot talk to people and has anger issues and road rage. *Id*. He will "cut people off in traffic" and "run little old ladies off the sidewalk." *Id*. This happens every day, and he is taking medication to address these issues. *Id*. He used to take Xanax but now takes Klonopin (Clonazeopam) because it has a "longer shelf life" and it is more effective. AR 35-36. The Klonopin is prescribed to be taken three times per day, but he only takes it one time per day so he can conserve the medication. AR 36.

Plaintiff suffers from depression and feels helpless as a result of the hepatitis. AR 36. It affects his day-to-day life because he does not want to speak to anybody and cannot do any type of work. *Id*. Plaintiff also suffers from insomnia, which is also a side effect of hepatitis. AR 37. He has to take prescription medication including Klonopin and Seroquel, to sleep. *Id*. He is lethargic and does not have the energy to do meaningful work. AR 39. He would like to return to caddying someday. *Id*. He eats, but has nevertheless lost 20 pounds. *Id*.

VE Hatakyamo testified that Plaintiff's past jobs are classified as medium and very heavy under the Dictionary of Occupational Titles (DOT),[4] but classified as light as Plaintiff has

---

[4] VE Hatakyamo classified "golf range attendant" and "warehouse worker" as medium, and "construction laborer" as very heavy, according to the DOT. AR 123.

performed them.[5]  AR 40.  Plaintiff's counsel asked VE Hatakyamo to consider an individual that is going to be absent from work twice per month due to various problems involving insomnia, depression, or headaches.  AR 41-42.  When asked by Plaintiff's counsel if this would be acceptable in Plaintiff's past relevant work or any other work, VE Hatakyamo testified that usually up to two absences per month is tolerable, but two absences per month on a consistent basis would be unacceptable.  *Id*.

**Medical Record**

The entire medical record was reviewed by the Court.  Summaries of the relevant reports and treatment notes are provided below.

*Saint Joseph Medical Center*

On May 6, 2005, Plaintiff was admitted to the emergency room at Saint Joseph Medical Center following a seizure.  AR 140.  He was diagnosed with recurrent acute generalized tonic clonic seizure, acute scalp abrasion, and history of cocaine abuse.  AR 142.

On February 1, 2008, Plaintiff was taken to the emergency room after a seizure lasting approximately one minute.  AR 524-525, 530-531.  Lawrence E. Wells, M.D., diagnosed Plaintiff with acute seizure and history of recurrent seizure disorder.  AR 524, 530.  Ativan and Xanax were prescribed.  *Id*.

*Valley Community Clinic*

On August 18, 2005, Plaintiff was seen for a lab follow-up visit at Valley Community Clinic.  AR 152.  He was diagnosed with Hepatitis C, including high liver enzymes, and referred to USC hepatology.  *Id*.

On September 27, 2005, Plaintiff was seen for a follow-up visit on biopsy results.  AR 150.  He complained of headaches, and an ankle injury he sustained while "motor cross biking."  *Id*.  He declined counseling and medication for anxiety.  *Id*.

On January 31, 2006, Plaintiff was seen for complaints of severe headaches and inability to sleep.  AR 148.  He was still waiting for a hepatitis consultation at USC.  *Id*.

---

[5] VE Hatakyamo does not indicate the reason for a lower classification of physical demand for Plaintiff's jobs as he performed them.  AR 123.

4

On February 28, 2006, Plaintiff was seen for a follow-up visit. AR 147. He complained of diarrhea, vomiting, headaches, insomnia, and anxiety. *Id*.

On May 18, 2006, a Registered Nurse Practitioner (RNP) completed a Mental Disorder Questionnaire Form. AR 218-222. The RNP indicated that Plaintiff complained of insomnia, irritability, and fatigue beginning in January 2006. AR 218. The RNP further indicated that Plaintiff had a history of alcohol and drug use and could be hostile, anxious, irritable, and angry at times. AR 219. He was diagnosed with depression, which the RNP expected to improve "as soon as [Plaintiff] understands his Hep C status more clearly." AR 222. His current mental condition did not interfere with his present daily activities, social functioning, concentration and task completion, or adaptation to work or work-like situations. AR 220-221.

On March 7, 2007, Plaintiff was seen for complaints of depression and headaches. AR 169. He stated he had not been followed up at USC because he did not respond to the treatment they prescribed. *Id*. He declined antidepressants because Cymbalta and Prozac made him feel "awful." *Id*. Progress notes indicate he was taking Verapamil for headaches. *Id*.

*USC Healthcare Network*

On May 8, July 24, and August 7, 2006, Plaintiff was treated for hepatitis at USC Healthcare Network. AR 321-322, 324, 326. Treatment notes on May 8, 2006, indicate mild depressive symptoms and chronic headaches. AR 321-322.

On July 26, 2006, Plaintiff was seen for complaints of headaches. AR 323. Treatment notes indicate a history of alcohol and drug abuse. *Id*. The notes further indicate that an MRI and an EEG were negative. *Id*.

*Nicholas N. Lin, M.D.*

On May 23, 2006, Nicholas N. Lin, M.D., at Carmel Medical Evaluations, performed a complete internal medicine evaluation at the request of the Department of Social Services. AR 223-227. Plaintiff's chief complaints were seizure disorder, Hepatitis C, and history of anxiety and depression. AR 223. His current medications were Topamax and Prozac. AR 224. Dr. Lin noted that Plaintiff had a history of cocaine drug abuse and depression, and was being treated for Hepatitis C and anxiety. AR 227. The physical and neurological examinations were

unremarkable. AR 225-226. The doctor opined that Plaintiff could lift or carry 50 pounds occasionally and 25 pounds frequently, could stand or walk for six hours in an eight-hour day, and could sit for six hours in an eight-hour day. AR 227. The doctor found no postural, manipulative, communicative, or environmental limitations. *Id*.

### *Jason H. Yang, M.D.*

On July 22, 2006, psychiatrist Jason H. Yang, M.D., at Medical Support Los Angeles, Inc., performed a complete psychiatric evaluation at the request of the Department of Social Services. AR 231-234. Plaintiff's history included alcohol and cocaine addiction, depression and anxiety, and Hepatitis C. AR 231. Plaintiff stated he was receiving Peg-Interferon treatment for the Hepatitis C and that he was prescribed Prozac and Paxil but only took them a few times because Prozac "made him feel like he was on acid." *Id*. Plaintiff indicated that he did not need to be on any psychiatric medications. *Id*.

Dr. Yang noted that Plaintiff is able to eat, dress, bathe, do household chores, run errands, go shopping, and cook meals. AR 232. When conducting a mental status examination, the doctor observed that Plaintiff's appearance and behavior were unremarkable. *Id*. He was alert and oriented, could perform simple calculations, and his memories were intact. *Id*. The doctor noted that Plaintiff's affect was full range and appropriate to mood. AR 233. Plaintiff stated that he felt "okay." *Id*. The doctor observed that Plaintiff had no obsessions or delusions and denied having suicidal or homicidal ideations or hallucinations. *Id*. Plaintiff was diagnosed with depressive disorder, not otherwise specified (NOS), and assigned a Global Assessment of Functioning (GAF) score of 63.[6] *Id*.

Dr. Yang opined that Plaintiff's prognosis was fair, he appeared to be able to make simple social, occupational, and personal adjustments, and he was capable of managing his own funds. AR 234.

---

[6] The Global Assessment of Functioning or "GAF" scale reflects a clinician's judgment of the individual's overall level of functioning. *American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders* 32 (4th ed. 2000) ("DSM IV"). A GAF between 61 and 70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM- IV at 34.

6

*UCLA Medical Center*

Plaintiff was seen at UCLA Medical Center from December 13, 2005, to October 2, 2007 for complaints of headaches. AR 361-367, 371-372, 377-378. Verapamil, Neurontin, Imitrex, Topamax, and Amitriptyline were prescribed. *Id*.

On August 11, 2005, an EEG was performed. The clinical impression indicated "Abnormal electroencephalogram due to bursts of theta, usually in the posterior temporal areas but also generalized . . ..". AR 373-374, 380-381. It was noted that "some of the bursts resemble normal drowsy or transient arousal patterns, [but] others are clearly beyond the spectrum of normal . . ..". AR 374, 381. Although this was suggestive of possible epileptic significance, the doctor indicated that it was not necessarily predictive of future unprovoked seizures. *Id*.

On December 20, 2005, and January 24, 2006, MRIs of Plaintiff's brain were performed, with normal results. AR 195, 217, 379.

On April 11, 2006, Plaintiff was seen for complaints of headaches. AR 193-194. A neurology evaluation was performed by Brian Buck, M.D. *Id*. The results were unremarkable. AR 193. The doctor prescribed Topamax and ordered a repeat EEG. AR 194.

On April 18, 2006, an EEG was performed with normal results. AR 368, 375-376.

On November 8, 2007, Plaintiff had a seizure. AR 360. Progress notes the following day indicate that Plaintiff stated the seizure occurred on the golf course, while carrying two bags of golf clubs and walking a long distance. *Id*. Plaintiff also stated that factors contributing to the seizure could have been lack of sleep, stress, fatigue, abrupt cessation of Xanax, and failure to take Neurontin as prescribed. *Id*. His Xanax prescription was refilled and he stated he would take more Neurontin and get more sleep. *Id*.

*Hollywood Free Clinic*

From December 20, 2006, to October 12, 2007, Plaintiff was treated at Hollywood Free Clinic for complaints of anxiety and depression. AR 266-271. Effexor, Klonopin, Cymbalta, Seroquel, Xanax, and Elavil were prescribed at various times. *Id*.

### *Richard H. Baker, M.D.*

Following the hearing before ALJ Reason, Richard H. Baker, M.D., performed a psychiatric examination and completed a Medical Source Statement (MSS) on April 23, 2008. AR 532-542.  Dr. Baker diagnosed Plaintiff with social phobia and depressive disorder NOS. AR 541.  The doctor opined that Plaintiff's mental impairment did not affect his ability to understand and remember simple instructions.  AR 534.  However, it mildly affected his ability to carry out simple instructions and make judgments on simple work-related decisions.  *Id*.  The doctor further opined that Plaintiff's mental impairment moderately affected his ability to carry out complex instructions and markedly affected his ability to make judgments on complex work-related decisions.  *Id*.  Dr. Baker opined that Plaintiff's ability to interact appropriately was mildly affected with regard to working with the public, markedly affected with regard to supervisors, and not affected with regard to co-workers.  AR 535.

### *Margaret A. Donohue, Ph.D.*

On June 2, 2008, after Plaintiff's hearing before the ALJ, he was also evaluated by psychologist Margaret A. Donohue.  AR 543-550.  Dr. Donahue performed a complete psychological evaluation and completed a MSS.  *Id*.  The doctor diagnosed Plaintiff with history of polysubstance dependence in reported remission except for marijuana, social phobia, and history of PTSD.  AR 546.  The doctor opined that Plaintiff's ability to understand, remember, and carry out instructions is not affected by his mental impairment.  AR 548.  The doctor further opined that Plaintiff's ability to interact appropriately with the public, supervisors, and co-workers is mildly affected by his mental impairment.  AR 549.

### **ALJ's Findings**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since March 21, 2006 (AR 10), and had the severe impairments of depressive disorder and polysubstance abuse.  AR 14.  Nonetheless, the ALJ determined that the severe impairments did not meet or exceed one of the listed impairments.  *Id*.

The ALJ reviewed the medical evidence and determined that Plaintiff had the RFC to perform no more than simple, repetitive tasks.  AR 15.  The ALJ also found that Plaintiff was

able to perform his past relevant work as golf range attendant, golf caddy, construction laborer, and/or warehouse worker.  AR 17.  Accordingly, a finding of "not disabled" was made, as defined in the Social Security Act.  AR 18.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since March 21, 2006, the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Regulations (20 CFR §§ 416.920(c)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in 20 CFR Part 404, Subpart P, Appendix 1; and (4) could perform his past relevant work. AR 10-17.

## DISCUSSION

### A.   *Plaintiff's Subjective Complaints*

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting his subjective complaints of migraine headaches. Defendant contends that the ALJ's credibility analysis was proper.

A two step analysis applies at the administrative level when considering a claimant's credibility. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id*. at 1281-1282. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Id*. at 1281. The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), quotations & citations omitted ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be sufficiently specific to make

clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (2007).

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ found that Plaintiff had the severe impairments of depressive disorder and polysubstance abuse. AR 14. With regard to Plaintiff's other impairments, including headaches, the ALJ found that

> [Plaintiff] has no more than, at most, slight impairments related to hepatitis, headaches and seizures, which medical evidence establishes as having no more than, at most, a minimal effect on his ability to perform basic work-related activities. Therefore, [Plaintiff] does not have a severe impairment related to hepatitis, headaches, seizures or any other physical/medical problem. (Citations omitted).
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> [Plaintiff's] medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

AR 14, 16. This finding satisfied step one of the credibility analysis. *Smolen*, 80 F.3d at 1281-1282.

Because the ALJ did not find that Plaintiff was malingering, he was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Smolen*, 80 F.3d at 1283-1284; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (as amended). When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his symptoms solely because they are unsupported by medical evidence. *Bunnell v.*

11

*Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7. Moreover, it is not sufficient for the ALJ to make general findings; he must state which testimony is not credible and what evidence in the record leads to that conclusion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell*, 947 F.2d at 345-346.

In this case, the ALJ made several credibility findings. He noted that:

> As for his reported headaches, although these are occasionally mentioned in the record and [Plaintiff] has been prescribed medications, he has never required hospitalizations and there is no particular evidence to support [Plaintiff's] allegations regarding the frequency and severity of his headaches. Again, as noted above, no treating or examining source has documented headache episodes to the degree [Plaintiff] alleges and no such medical source has assessed [Plaintiff] with any functional limitations related to his reported migraines. Moreover, there is no evidence of any negative side effects of any medications [Plaintiff] may take to relieve his headaches.
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> Other factors bearing negatively on [Plaintiff's] credibility include his ongoing use of alcohol, drugs, and marijuana (which he admits in the record were major factors in some of his seizures) and [Plaintiff's] apparent ongoing work activity. As noted above, [Plaintiff] was reportedly still working as a golf caddy in 2008 when he experienced a seizure and he told Dr. Baker that he was fired as a caddy the day before his evaluation due [to] the golf club having money problems.
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> [Plaintiff] has repeatedly indicated that he has no problems performing daily living activities.

AR 14, 16-17. Although Plaintiff argues the ALJ relied solely on medical evidence alone to discredit his testimony regarding headaches, it is clear the ALJ relied on other factors as well.

As a preliminary matter the ALJ correctly notes that the medical records do not document Plaintiff's headache episodes to the extent alleged. AR 14. Although the medical record contains subjective complaints of headaches, those complaints are unsupported by objective medical evidence. On August 11, 2005, an EEG was performed with no abnormal findings pertaining to headaches. AR 373-374, 380-381. On December 20, 2005, and January 24, 2006, MRIs of Plaintiff's brain were performed, with normal results. AR 195, 217, 379. On April 11, 2006, a neurology evaluation was performed with unremarkable results. AR 193-194. On April 18, 2006, another EEG was performed with normal results. AR 368, 375-376. On July 26, 2006, MRI and EEG results were again negative. AR 323. In addition, the ALJ noted that Plaintiff never required hospitalization for his headaches and that no treating or examining physician

documented Plaintiff's headaches with the severity alleged or identified any functional limitations related to headaches. AR 14.

Medical impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for benefits. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Here, Plaintiff testified that he has headaches every day, which he can "kind of get through" by taking ibuprofen. AR 33-34. From December 13, 2005, to October 2, 2007, Imitrex, Topamax, and Verapamil were prescribed. AR 361-367, 371-372, 377-378. On April 11, 2006, Topamax was again prescribed. AR 194. On May 23, 2006, examination notes indicated Topamax as one of his current medications. AR 224. On March 7, 2007, progress noted indicated he was taking Verapamil for headaches. AR 169. The ALJ noted that Plaintiff was prescribed medication for his headaches, with no reported side effects. AR 14. Plaintiff's headaches appear to be well within Plaintiff's control and the ALJ properly relied on this evidence to discredit his testimony.

The ALJ also properly concluded that Plaintiff's ongoing work activity and lack of problems performing daily living activities discredited his claims of total disability. AR 14, 16-17. A claimant is not required to be completely incapacitated to qualify for disability benefits; however, daily home activities are relevant evidence to consider in a credibility analysis where such activities are transferable to the workplace. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). For example, in *Burch v. Barnhart*, the claimant was able to care for her own personal needs, cook for herself, clean and shop. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). The ALJ found her "quite functional." *Id*. In *Orteza v. Shalala*, 50 F.3d 748 (9th Cir. 1994) (per curiam), the ALJ's consideration of claimant's "various household chores such as cooking, doing the dishes, going to the store, visiting relatives and driving," was proper. *Orteza*, 50 F.3d at 750. *See also Morgan v. Apfel*, 169 F.3d 595, 600 (9th Cir. 1999) (Claimant's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child was evidence of claimant's ability to work).

Here, examining psychiatrist Dr. Yang noted that Plaintiff was able to eat, dress, bathe, do household chores, run errands, go shopping, and cook meals. AR 232. Progress notes

following Plaintiff's November 8, 2007, seizure indicate that Plaintiff stated the seizure occurred on the golf course, while carrying two bags of golf clubs and walking a long distance. AR 360. Although Plaintiff testified that he could not do any type of work, it appears that Plaintiff is "quite functional." *Burch v. Barnhart*, 400 F.3d 680, 681 (9th Cir. 2005). "If a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working." *Fair v. Bowen*, 885 F.2d at 603.

The credibility findings made by the ALJ are specific and are supported by evidence in the record. Thus, the ALJ did not err in rejecting Plaintiff's subjective complaints of headaches because the ALJ gave clear and convincing reasons for finding the Plaintiff not credible.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff John S. Pintar.

IT IS SO ORDERED.

Dated:   **July 15, 2010**             /s/ **Gary S. Austin**
                                    UNITED STATES MAGISTRATE JUDGE